Catherine HALL and C. Wes Minor

v.

Ray MARSHALL, William Usery, Philadelphia Local, American Postal Workers Union, American Postal Workers Union, James Dunlap, Philip Fleming, David Johnson, Al Rosen, John Grace, Vincent Logan, United States Postal Service.

Civ. A. No. 77-2764.

United States District Court, E. D. Pennsylvania.

Sept. 7, 1979.

David Kairys, Kairys, Rudovsky & Maguigan, Philadelphia, Pa., for plaintiff.

Louis Weiner, Thomas Jennings, Sagot & Jennings, Philadelphia, Pa., for defendants Phila. Local, American Postal Workers Union, AFL–CIO; James Dunlap; Philip Fleming; David Johnson; Al Rosen; and John Grace.

Anthony F. Cafferky, Murtha, Cafferky, Powers & Jordan, Washington, D. C., for defendant American Postal Workers Union, AFL–CIO.

Peter F. Vaira, U. S. Atty., William J. McGettigan, Asst. U. S. Atty., Marshall H. Harris, Regional Sol., Edward T. Ellis, Mark D. Newberger, U. S. Dept. of Labor, Philadelphia, Pa., for defendant Secretary of Labor.

Bruce Joel Jacobsohn, Senior Asst. Regional Labor Counsel, U. S. Postal Service, Philadelphia, Pa., for defendants United States Postal Service and Vincent Logan.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Plaintiffs, Catherine Hall and C. Wes Minor, filed this civil action against Ray Marshall, the Secretary of Labor; William Usery, former Secretary of Labor; American Postal Workers Union (the "APWU"); Philadelphia Local, APWU (the "Local"); James Dunlap, a member of the Local; Philip Fleming, President of the Local; David Johnson, Vice-President of the Local; Al Rosen, a former President of the Local; Vincent Logan, Postmaster of Philadelphia; and the United States Postal Service. Plaintiffs, members of the Local, seek relief in connection with two elections for the office of General Treasurer of the Local. They challenge the decision of the defendant, Secretary of Labor (the "Secretary"), declining to bring suit to have the election results set aside under section 402 of Title IV of the Labor-Management Reporting and Disclosure Act of 1959 (the "LMRDA"), 29 U.S.C. § 482.

Presently before the Court are defendants, Local and United States Postal Service's, motion to dismiss or in the alternative for summary judgment, defendant, Secretary's, motion for summary judgment, defendants, Local, APWU, Dunlap, Fleming, Johnson, Rosen and Grace's, motion to dismiss or in the alternative for summary judgment, and plaintiffs' motion for partial summary judgment. For the reasons hereinafter set forth, the defendants' motions for summary judgment will be granted, and the plaintiffs' motion will be denied.

*The Labor-Management Reporting and Disclosure Act of 1959.*

Plaintiffs challenge the decision of the Secretary not to institute suit to have election results set aside under section 402 of Title IV of the LMRDA, 29 U.S.C. § 482.[1]

---

1. 29 U.S.C. § 482 provides:
 Filing of complaint; presumption of validity of challenged election.
 (a) A member of a labor organization—
 (1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or

(2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation, may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 481 of this title (including violation of the constitution and

The LMRDA regulates various aspects of labor-management relations in an attempt to ensure that "labor organizations, employers, and their officials adhere to the highest standards of responsibility and ethical conduct in administering the affairs of these organizations . . ." 29 U.S.C. § 401(a). The special function of Title IV of the LMRDA is to ensure free and democratic union elections, and the statute sets forth an exclusive enforcement scheme to redress election abuses. *Dunlop v. Bachowski*, 421 U.S. 560, 569, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975); *Trbovich v. United Mine Workers*, 404 U.S. 528, 532, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972); *Wirtz v. Bottle Blowers Association*, 389 U.S. 463, 470, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968); *Calhoon v. Harvey*, 379 U.S. 134, 140, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964).

■ The LMRDA precludes any private right of action by disappointed office seekers or other union members to contest the results of a union election. Section 402 of Title IV, 29 U.S.C. § 482, sets up an exclusive method for protecting rights under the LMRDA by permitting an individual union member to file a complaint with the Secretary challenging the validity of an election. The Secretary is required to investigate the allegations of such complaint, and, if he finds probable cause to believe that Title IV has been violated and that the violation probably affected the outcome of the election, he may file suit against the union to set aside the election results and secure a new election conducted under his supervision, *Dunlop*, 421 U.S. at 570, 95 S.Ct. 1851; *Wirtz*, 389 U.S. at 472, 88 S.Ct. 643. As the Court said in *Trbovich*, 404 U.S. at 532, 92 S.Ct. 630, and reiterated in *Dunlop, supra*, at 569, 95 S.Ct. at 1859:

> Congress made suit by the Secretary the exclusive post-election remedy for two principal reasons: (1) to protect unions from frivolous litigation and unnecessary judicial interference with their elections, and (2) to centralize in a single proceeding such litigation as might be warranted
>
> · · · ·

*Scope of Court's Review of Secretary's Decision Declining Institution of Legal Action.*

■ The LMRDA does not expressly authorize or prohibit judicial review of the

bylaws of the labor organization pertaining to the election and removal of officers.) The challenged election shall be presumed valid pending a final decision thereon (as hereinafter provided) and in the interim the affairs of the organization shall be conducted by the officers elected or in such other manner as its constitution and bylaws may provide.

Investigation of complaint; commencement of civil action by Secretary; jurisdiction; preservation of assets.

(b) The Secretary shall investigate such complaint, and, if he finds probable cause to believe that a violation of this subchapter has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action against the labor organization as an entity in the district court of the United States in which such labor organization maintains its principal office to set aside the invalid election, if any, and to direct the conduct of an election or hearing and vote upon the removal of officers under the supervision of the Secretary and in accordance with the provisions of this subchapter and such rules and regulations as the Secretary may prescribe. The court shall have power to take such action as it deems proper to preserve the assets of the labor organization.

Declaration of void election; order for new election; certification of election to court; decree; certification of result of vote for removal of officers.

(c) If, upon a preponderance of the evidence after a trial upon the merits, the court finds—

(1) that an election has not been held within the time prescribed by section 481 of this title, or

(2) that the violation of section 481 of this title may have affected the outcome of an election,

the court shall declare the election, if any, to be void and direct the conduct of a new election under supervision of the Secretary, and, so far as lawful and practicable, in conformity with the constitution and bylaws of the labor organization. The Secretary shall promptly certify to the court the names of the persons elected, and the court shall thereupon enter a decree declaring such persons to be the officers of the labor organization. If the proceeding is for the removal of officers pursuant to subsection (h) of section 481 of this title, the Secretary shall certify the results of the vote and the court shall enter a decree declaring whether such persons have been removed as officers of the labor organization.

Secretary's decision not to bring suit challenging the validity of a union election. The Supreme Court of the United States, however, has held that 28 U.S.C. § 1337 confers jurisdiction upon the district court to entertain a suit challenging the Secretary's decision, and that 5 U.S.C. §§ 702 and 704 subject the Secretary's decision to the standard of review specified in 5 U.S.C. § 706(2)(A). *Dunlop v. Bachowski*, 421 U.S. at 566, 95 S.Ct. 1851. Section 706(2)(A) provides:

The reviewing court shall—

\* \* \* \* \* \*

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . .

Under this standard, the Court must determine whether the Secretary's decision that legal action "was unwarranted in this case" is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Because section 402 of Title IV, 29 U.S.C. § 482, relies upon the special knowledge and discretion of the Secretary for the determination of both the probable violation of Title IV and its probable effect, the Court is not authorized to substitute its judgment for the decision of the Secretary. To enable the Court to intelligently review the Secretary's determination, the Secretary must provide the Court and the complainant with copies of a statement of reasons supporting his decision. *Dunlop*, 421 U.S. at 571, 95 S.Ct. 1851. As stated by the Court in *Dunlop*, id., at 574, 95 S.Ct. at 1861:

. . . a statement of reasons must be adequate to enable the court to determine whether the Secretary's decision was reached for an impermissible reason or for no reason at all. For this essential purpose, although detailed findings of fact are not required, the statement of reasons should inform the court and the complaining union member of both the grounds of decision and the essential facts upon which the Secretary's inferences are based.

The Supreme Court in *Dunlop, supra,* defined the permissible scope of this Court's review in the following manner:

Except in what must be the rare case, the court's review should be confined to examination of the "reasons" statement, and the determination whether the statement, without more, evinces that the Secretary's decision is so irrational as to constitute the decision arbitrary and capricious. Thus, review may not extend to cognizance or trial of a complaining member's challenges to the factual bases for the Secretary's conclusion either that no violations occurred or that they did not affect the outcome of the election. The full trappings of adversary trial-type hearings would be defiant of congressional objectives not to permit individuals to block or delay resolution of post-election disputes, but rather "to settle as quickly as practicable the cloud on the incumbents' titles to office": and "to protect unions from frivolous litigation and unnecessary interference with their elections."

*Id.* at 572–73, 95 S.Ct. at 1860.

■ The Court in *Dunlop, supra,* proceeded to identify some of the "rare cases" that might justify review beyond the confines of the reasons statement. The Court stated that such review would be proper "if the Secretary were to declare that he no longer would enforce Title IV or otherwise completely abrogate his enforcement responsibilities . . . [or] if the Secretary prosecuted complaints in a constitutionally discriminatory manner." *Id.* at 574, 95 S.Ct. at 1861. Other such cases might arise when the Secretary's decision is "plainly beyond the bounds of the Act [or] clearly defiant of the Act." *Id.* (quoting *DeVito v. Schultz,* 72 LRRM 2682 (D.D.C.1969)). Plaintiffs, however, contend that the Court should look beyond the statement of reasons and conduct a factual inquiry in this case. For the reasons hereinafter set forth, the Court has determined that none of the allegations of plaintiffs' complaint brings this case within the class of "rare cases" in which

review beyond the confines of the statement of reasons might be justified. Our review is therefore limited to an examination of the reasons statement and the determination whether that statement, without more, evinces that the Secretary's decision not to bring suit is so irrational as to constitute his decision arbitrary and capricious.

*History of this Case.*

In June, 1976, the Local held a general election in which plaintiff Hall defeated the incumbent, defendant Dunlap, in the race for the office of General Treasurer of the Local by a margin of twenty-eight votes. Dunlap successfully challenged the validity of the election via the APWU's internal election appeals mechanism on the ground that not all Local members had received ballots. The APWU's National Election Appeals Committee (the "Committee") directed that a new election be held for the offices of General Treasurer and one other office. Hall protested this decision to the Committee by letter dated October 25, 1976.[2] The Committee denied his protest on November 4, 1976. The second election was held, and, on November 30, 1976, it was announced that Dunlap defeated Hall by a margin of 277 votes. On November 18, 1976, Hall filed an election protest with Frank H. Palmer, Judge of Election, on the ground that Dunlap wrongly used a special third-class bulk postage rate for the mailing of his campaign literature to the membership in connection with the second election. The Postal Service required that Dunlap pay the difference between the bulk postage rate and the regular first-class rate, and Dunlap did so. Palmer denied Hall's protest by letter dated December 10, 1976. Hall appealed this denial to the Committee by letter dated December 17, 1976. The Committee denied the protest by letter dated December 30, 1976.

Plaintiff Minor, a member of the Local who ran unsuccessfully for the office of General President in the first election in June, also protested the conduct of the second election in November, by letter dated December 3, 1976 to Frank Palmer. Palmer denied this protest on January 5, 1977. Minor complained that certain requirements of the Local's constitution regarding notice of the election and attestation of the eligible voter list were not met. He also complained that Hall was not given the first ballot position guaranteed the incumbent by the Local's constitution.

On January 27, 1977, Hall and Minor filed a joint complaint with the Secretary protesting the APWU's decision to conduct the second election in November, 1976 and alleging violations of section 401 of Title IV of the LMRDA, 29 U.S.C. § 481, in the conduct of the second election. Besides those matters raised in their protests to the Local and APWU, Hall complained that union officials had obstructed her in the performance of her duties as General Treasurer, which position she won in the first election, jeopardized her employment with the Postal Service, and refused to pay her fairly for her work.

By letters dated June 13, 1977 and July 12, 1977, addressed to plaintiffs from Carl Rolnick, Director of the Office of Labor-Management Standards Enforcement of the United States Department of Labor, the Secretary advised the plaintiffs that legal action was found to be unwarranted in their case. Included in these letters were statements of reasons explaining the bases of the Secretary's decision not to bring suit.

*Review of the Statement of Reasons.*

The Secretary's letter of June 13, 1977 stated that Hall's complaint regarding the Committee's decision to conduct the second election was untimely in that section 402 of the LMRDA, 29 U.S.C. § 482, requires that a complaint to the Secretary be filed within

---

**2.** Hall contends that the decision to conduct the rerun election was discriminatory. Hall was a member of an opposition slate of candidates which won two offices in the general election: General Treasurer and Assistant Director of Clerk Craft. Plaintiffs allege that the Committee declared the election invalid only as to these offices, although the races for some other offices were close enough that they, too, could have been affected by the fact that not all Local members had received ballots.

one calendar month after exhaustion of available union remedies.[3] The Secretary found that Hall had exhausted her available union remedies on November 4, 1976, but that she did not complain to the Secretary until January 27, 1977, more than two months after receiving the Committee's final decision.

■ The one month period set forth in section 402, 29 U.S.C. § 482, has been held mandatory. If a complainant fails to file a protest with the Secretary within one month of exhausting union remedies, an action filed by the Secretary must be dismissed, *Hodgson v. United Steelworkers of America*, 459 F.2d 348, 350 (3d Cir. 1972). Furthermore, it has been held that the time for filing a complaint with the Secretary is not extended by faulty advice received from Labor Department employees where the defendant union did not contribute in any way to the misinformation. *Schultz v. United Steelworkers of America*, 319 F.Supp. 1172 (W.D.Pa.1970). Plaintiffs in this action allege that the reason Hall did not file her complaint with the Secretary in a timely fashion is that a Labor Department employee informed plaintiff Minor by phone that a challenge to the decision to hold the second election could not be made until after the second election was held. Plaintiffs do not allege that the defendant union contributed in any way to the misinformation. The Secretary has filed an affidavit, which is uncontroverted, denying that a Labor Department employee gave plaintiff Minor the erroneous advice. The factual dispute, if any now exists, is immaterial to our determination as to whether the Secretary acted in an arbitrary or capricious manner in making his decision that Hall's complaint was untimely filed. Even if plaintiffs failed to file their complaint in a timely fashion because they received erroneous information from the Labor Department, the Secretary's decision that plaintiffs' complaint was untimely filed was not arbitrary, capricious, an abuse of discretion, nor otherwise not in accordance with law.

With regard to plaintiffs' allegation that union officials obstructed Hall in the performance of her duties as General Treasurer after the first election, jeopardized her position with management, and refused to compensate her fairly for her work, the Secretary's letter of June 13, 1976 states that these matters were not raised in their internal protests to the Local and consequently could not form the basis for an action against the Local or APWU. The Secretary's letter further states that the Department investigated these complaints and found that Hall had been given help in learning her duties, that the Local offered to send her to a training session in Washington, D. C., that the Local filed a grievance on her behalf when the Postal Service did not grant her leave to serve as General Treasurer, and that the Local paid her fairly for the work which she performed. Given the Secretary's factual determinations and the fact that the Supreme Court of the United States has ruled in *Hodgson v. Local Union 6799, United Steelworkers of America*, 403 U.S. 333, 341, 91 S.Ct. 1841, 29 L.Ed.2d 510 (1971), that when a union member is aware of facts supporting an alleged election violation the member must, in some discernible fashion, indicate to the union his dissatisfaction with those facts if he is to meet the exhaustion requirements of section 402, 29 U.S.C. § 482,[4] the Secretary's decision not to prosecute this aspect of plaintiffs' complaint was also not arbitrary, capricious, an abuse of discretion, nor was it otherwise not in accordance with law.

The Secretary's July 12, 1977 letter informed plaintiff Minor that the Secretary would not institute suit on the basis of plaintiffs' allegation that Hall was not given the first ballot position in the second election. The Local's Constitution guarantees the first ballot position to the incumbent.[5] The Secretary's letter of July 12, 1977 states:

3. *See* n. 1 *supra.*

4. *See* n. 1 *supra.*

5. Article XI, § 17 of the constitution of the APWU, Philadelphia, Pa. Local AFL–CIO (as

amended Nov. 20, 1975) provides in pertinent part:

> The incumbent shall be in the first position on the ballot and the other candidates selected by lot by the balloting association under the supervision of the Judge of Election.

As this was a rerun election, the union put all candidates on the ballot in the same order as in the original election. Since that election had been set aside, Cathy Hall was not considered to be the duly elected incumbent and thus not entitled to a preferential place on the ballot. The position of the union is a reasonable one and no violation of the Act [the LMRDA] is apparent here.

This determination by the Secretary was not arbitrary, capricious, an abuse of discretion, nor was it otherwise not in accordance with law.

Regarding plaintiff Minor's complaint that the attestation of the eligible voter list requirement of the Local's constitution was not met,[6] the Secretary's July 12, 1977 letter states:

The index cards were checked for the original election. Hall and two others did a spot check prior to the rerun election. The person who ran the election in his final report noted that the cards were "wonderously accurate." Even if the Constitution should be interpreted as requiring an attestation in writing prior to a rerun election, there is no showing that a failure to follow the Constitution in this respect may have had an effect on the outcome of the election.

The Secretary's determination not to institute suit on the basis that the attestation requirement may not have been met was not arbitrary, capricious, an abuse of discretion, nor was it otherwise not in accordance with law.

In his complaints to the union and to the Secretary, plaintiff Minor also alleged that the notice of the rerun election was deficient. The Secretary's July 12, 1977 letter states:

The notice of the rerun election was mailed to each member as part of a mail ballot kit. The mailing was made on November 12, 1976, and ballots had to be returned by November 22, 1976. Notices of the election were also posted on the bulletin boards on October 18, 1976. The notice given did identify the offices to be filled and gave adequate instructions about voting. However, the time allowed for voting was only ten days. Neither you nor any other member was able to give the name of any one who did not vote because of lack of time. In the investigation of this case, members were selected at random and questioned on this point, and no one said he did not vote because of the shortness of time or gave the name of any other person who did not vote. Although the election was only for two offices, almost as many members voted as when a full complement of officers had been elected, 2,481 to 2,125. There were only 40 envelopes which were not received before the end of the 15-day period. The two races were decided by more than 40 votes. While the notice was defective in that it was only a 10 day notice, it cannot be shown that it had any effect on the outcome of the election.

The determination not to institute suit on the basis of the deficient notice was not arbitrary, capricious, an abuse of discretion, nor was it otherwise not in accordance with law.

■ One other allegation in the complaint to the Secretary must be considered. Paragraph 12 of plaintiffs' complaint to the Secretary alleges:

Complainant Hall challenged the second election by letter of November 18, 1976, on the ground that management and Local officials had provided Mr. Dun-

**6.** Article XI of the constitution of the APWU, Philadelphia, Pa. Local AFL–CIO (as amended Nov. 20, 1975) provides in pertinent part:

Section 15 . . . cards shall contain the name, current address and social security number of [each] member.

Section 16 The index cards must be current and correct by the April General Membership Meeting. This must be attested to in writing by the Judge of Election, the Editor and the responsible General Financial Officer.

lap with unfair advantages (copy attached as Exhibit E). Mr. Dunlap was illegally allowed to send campaign literature to every member of the Local by 3rd (sic) class bulk mail with precancelled 2¢ (sic) stamps . . .

The Secretary's letter of June 13, 1977 setting forth his decision that the investigation disclosed no violation of the LMRDA stated:

You alleged the following both to the union and to the Secretary of Labor

\*　\*　\*　\*　\*　\*

2. James Dunlap, your opponent, used employer funds to promote his candidacy in the rerun since he was able to mail campaign literature to 5,000 members at the special third class bulk rate.

\*　\*　\*　\*　\*　\*

Although Mr. Dunlap improperly mailed his campaign literature at the special third class bulk rate, this was not done with the knowledge or the approval of the post office. While it appears to be a violation of postal regulations, it does not constitute a violation of the LMRDA.

Plaintiffs claim that Dunlap's improper mailing was a violation of section 401(g) of Title IV of the LMRDA, 29 U.S.C.A. § 481(g), in that the Postal Service, in accepting Dunlap's improper mailing, made a contribution to promote Dunlap's candidacy.[7] Section 401(g) provides in pertinent part:

. . . no moneys of an employer shall be contributed or applied to promote the candidacy of any person in an election subject to the provisions of this subchapter.

The Secretary reasoned that Dunlap's use of the third class bulk rate, although a violation of the postal regulations, did not constitute a violation of the LMRDA in that it was not done with the knowledge or the approval of the Postal Service. The Secretary's decision that section 401(g) of Title IV of the LMRDA, 29 U.S.C. § 481(g), was not violated in that the Secretary's investigation revealed that the improper mailing was not done with the knowledge or the approval of the employer is not arbitrary, capricious, an abuse of discretion, nor otherwise not in accordance with law.

Plaintiffs also claim that the Secretary's statement of reasons is insufficient in that it does not respond to their allegation that officials of the Local union were involved in Dunlap's improper mailing. It is their contention that at the time Dunlap made the improper mailing he was the General Treasurer of the Local and his improper mailing was therefore an act of the Local. Such reasoning is unsupported by the record. Plaintiffs in their complaint state that Dunlap was the incumbent Treasurer who was defeated by plaintiff Hall in the first election. The mailing took place after the first election. Plaintiff Hall alleges that she was acting as General Treasurer at the very time Dunlap made his improper mailing (circa November 12, 1976).[8] Furthermore, plaintiffs' complaint to the Secretary alleges that Hall challenged the second election by letter of November 18, 1976 and attaches a copy of that letter. The November 18th letter makes no allegation that Local union officials were involved in Dunlap's improper mailing. It alleges only the involvement of management. The Secretary interpreted plaintiffs' complaint as an allegation against management only. The Secretary's letter of June 13, 1977 summarizes plaintiffs' allegation by stating that Hall alleged

---

7. Dunlap made his improper mailing on or about November 12, 1976 (Complaint to the Secretary, Exhibit H). The election was held between November 10 and November 22, 1976. The votes were tallied between November 22 and November 30, 1976 (The Secretary's July 12, 1977 letter.) The Postmaster by letter dated November 30, 1976 informed plaintiff Hall that Dunlap had already paid the Postal Service the additional postage of 12 cents per piece (Complaint, Exhibit B).

8. Additionally, the Court notes that 29 U.S.C. § 482(a)(2) provides:

. . . The challenged election shall be presumed valid pending a final decision thereon . . . and in the interim the affairs of the organization shall be conducted by the officers elected or in such other manner as its constitution and bylaws may provide.

that Dunlap used "employer funds to promote his candidacy." Furthermore, since Hall's protest to the union did not include an allegation that Local union officials were involved in Dunlap's improper mailing, the Secretary was precluded from considering such an allegation. As we have already pointed out, the Supreme Court has ruled that the Secretary is barred from considering an alleged election violation which was not presented to the union. *Hodgson v. Local Union 6799, United Steelworkers of America,* 403 U.S. 333, 91 S.Ct. 1841, 29 L.Ed.2d 510 (1971). We therefore conclude that the Secretary's decision that Dunlap's improper mailing did not constitute a violation of the LMRDA was not arbitrary, capricious, an abuse of discretion, nor otherwise not in accordance with law.

*Additional Grounds For Relief.*

Besides alleging that the Secretary's decision not to bring suit was arbitrary and capricious and that the Secretary's statement of reasons is insufficient, plaintiffs make general and conclusionary allegations that the Secretary did not consider important evidence bearing on this case and that the Secretary and his predecessors have repeatedly violated and frustrated implementation of Title IV of the LMRDA by regularly refusing to prosecute valid claims without reason or justification, and plaintiffs request that this Court conduct an evidentiary hearing. The Supreme Court in *Dunlop,* 421 U.S. at 572, 95 S.Ct. at 1860, stated:

> Except in what must be the rare case, the court's review should be confined to an examination of the "reasons" statement, and the determination whether the statement, without more, evinces that the Secretary's decision is so irrational as to constitute the decision arbitrary and capricious.

The Court further stated, *id.* at 574, 95 S.Ct. at 1861:

> . . . the rare case that might justify review beyond the confines of the reasons statement might arise, for example, "if the Secretary were to declare that he no longer would enforce Title IV, or otherwise completely abrogate his enforcement responsibilities . . . [or] if the Secretary prosecuted complaints in a constitutionally discriminatory manner . . ." Other cases might be imagined where the Secretary's decision would be "plainly beyond the bounds of the Act [or] clearly defiant of the Act." Since it inevitably would be a matter of grave public concern were a case to arise where the complaining member's proofs sufficed to require judicial inquiry into allegations of that kind, we may hope that such cases would be rare indeed. (citations omitted).

The issue presented therefore is whether plaintiffs' general and conclusionary allegations—that the Secretary failed to consider important evidence and that the Secretary and his predecessors in office have repeatedly frustrated implementation of Title IV of the LMRDA by regularly refusing to prosecute valid claims without reason or justification—suffice to bring this case within the class of "rare cases" in which review beyond the confines of the reasons statement would be justified.

The only factual allegation by plaintiffs which might support their general and conclusionary claims is their contention that the Secretary failed to consider their evidence that they had received erroneous information from a Labor Department employee concerning the time to file their complaint. As heretofore determined, the factual dispute, if any exists, as to whether a Labor Department employee erroneously advised plaintiffs regarding the time for filing an election challenge was not material to our determination that the Secretary's decision concerning the untimely filing of the complaint neither was arbitrary nor capricious.[9] Since the Secretary's decision was not arbitrary or capricious, then it was not "plainly beyond the bounds of the Act [or] clearly defiant of the Act." *Dunlop, supra* at 574, 95 S.Ct. at 1861. Furthermore, the Court has determined that the

9. *See* p. 268 of this Memorandum.

Secretary's statement of reasons addresses itself to every one of plaintiffs' complaints concerning alleged election violations. As heretofore stated, the Court has found in each instance that the reason given by the Secretary had a rational basis and was not arbitrary or capricious. It follows, therefore, that the allegation that the Secretary and his predecessors have repeatedly frustrated implementation of Title IV of the LMRDA does not justify an evidentiary hearing in this case. This is not "the rare case that might justify review beyond the confines of the reasons statement." *Id.*

Plaintiffs also allege that the Secretary improperly and unlawfully delegated his authority under section 402 of Title IV, 29 U.S.C. § 482, to decide whether to institute suit. The Secretary's Order No. 11–72, dated May 12, 1972 delegates authority and assigns responsibility for Labor-Management Relations Programs, including activities to be performed by the Secretary under the LMRDA, to the Assistant Secretary for Labor-Management Relations. This Order also authorizes the Assistant Secretary to redelegate such authority and responsibility, except as provided in the Order. It also provides that the Solicitor of Labor shall have the responsibility for providing legal advice to the Assistant Secretary. The Order reserves to the Secretary the following:

> The bringing of legal action under the statutes listed in paragraph 4 above [the LMRDA], the determination in each case whether such proceedings are appropriate to be made by the Solicitor of Labor. When agreement is not reached between the Assistant Secretary for Labor-Management Relations and the Solicitor regarding the bringing of such legal action, the Assistant Secretary shall refer the matter to the Secretary for decision.

Under Secretary's Order 11–72, therefore, the Secretary has reserved decisionmaking authority under the LMRDA only in those cases where the Solicitor and Assistant Secretary do not agree on the determination whether to institute suit. Labor-Management Services Administration Order No. 2–2, dated October 19, 1972, redelegates the authority and responsibility assigned the Assistant Secretary to the Deputy Assistant Secretary for Labor-Management Relations and the Office Directors of the Administration. Under this Order, the Director of Labor-Management Standard Enforcement has the responsibility for planning, administering, and directing the program to carry out the provisions of the LMRDA and supporting regulations.

The LMRDA is silent on the issue of subdelegation. While the legality of a subdelegation of an agency's power is primarily a function of legislative intent, the omission of any specific grant of power to delegate should not be construed as a denial of that power. *Fleming v. Mohawk Wrecking & Lumber Co.*, 331 U.S. 111, 67 S.Ct. 1129, 91 L.Ed. 1375 (1947); *Tabor v. Joint Board For Enrollment of Actuaries*, 566 F.2d 705, 708 (D.C.Cir. 1977); *EEOC v. Raymond Metal Products Co.*, 385 F.Supp. 907, 921 (D.Md.1974). The Secretary of Labor, as the head of an executive department, has a "general power of delegation" under 5 U.S.C. § 301,[10] *Wirtz v. Atlantic States Construction Co.*, 357 F.2d 442 (5th Cir. 1966). Moreover, as the Court pointed out in *Atlantic States Construction, supra*:

> Unless . . . the statutory agent is hemmed in, the "administrative flexibility necessary for prompt and expeditious action on a multitude of fronts," *Fleming v. Mohawk Wrecking & Lumber Co.*, 331 U.S. at 122, [67 S.Ct. 1129,] points in the direction of more, not less, delegation. To argue for nondelegability in those situations in which Congress has not spoken explicitly and thereby insist upon personal performance by the Executive or the Chief Statutory Administra-

---

**10.** 5 U.S.C. § 301 provides:

§ 301. Departmental regulations

The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. This section does not authorize withholding information from the public or limiting the availability of records to the public.

tive Office envisages many unsatisfactory results. It will mean less, not greater, attention to the intrinsic merits of each situation requiring action. It will make governmental bureaucracy more, not less, formidable and frustrating . . . It is absurd to think, or to think that Congress would think, that the Secretary of Labor faced with his multitudinous statutory obligations in a hundred different areas should have the further responsibility of personally passing upon each of the hundreds and hundreds of legal actions filed each year in the enforcement of FLSA [the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.*].

In Count two of their complaint, plaintiffs allege that they had no communication from or with the Secretary or his agents in Washington, while the Secretary and his agents had numerous and extensive discussions with the defendant union officials,[11] and that the Secretary breached a duty, imposed upon him by federal law and the United States Constitution, to obtain a complainant's position on all important issues in a case. Plaintiffs allege that the Secretary breached this duty in failing to consult with them regarding the timeliness of their challenge to the Committee's decision to hold a rerun election.

 Plaintiffs' contention that the LMRDA and the United States Constitution impose a duty on the Secretary to consult with complainants regarding all of the important issues in a case must be rejected. Plaintiffs contend that section 402 of Title IV, 29 U.S.C. § 482, establishes the Secretary's role as lawyer for the complaining union member and that the minimum content of this role includes a duty on the part of the Secretary to consult with complainant regarding all of the important issues in a case. The LMRDA does give individual union members certain rights against their union, and the Secretary may become the union member's advocate for purposes of enforcing those rights, but the Secretary also has an obligation to protect "[the] vital public interest in assuring free and democratic union elections that transcends the narrower interest of the complaining union member," *Dunlop v. Bachowski*, 421 U.S. at 569, 95 S.Ct. at 1859; *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538–39, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972); *Brennan v. United Steelworkers of America*, 554 F.2d 586, 599 (1977). One result of these competing interests is that the complaining union member cannot "indulge a client's usual prerogative to direct his lawyer to file suit." *Dunlop*, 421 U.S. at 572, 95 S.Ct. at 1860. Similarly, the LMRDA does not give the complaining union member the right to consult with his "lawyer" whenever he thinks such consultation is important. As the Court said in *Sadlowski v. Marshall*, 464 F.Supp. 858 (D.D.C.1979):

> In conducting an investigation and in deciding whether probable cause exists to institute suit, the Secretary is to serve the public interest and not the interests of any private party. Only after the Secretary has instituted suit does he assume a partisan role and become an advocate for the complaining union member. *See Trbovich v. United Mine Workers*, 404 U.S. 528, 539, [92 S.Ct. 630, 30 L.Ed.2d 686] (1972). This stage was never reached in this case. As a result, plaintiffs cannot seek judicial relief based on the Secretary's alleged violation of a nonexistent duty. *Id.* at 865. (footnotes omitted).

Furthermore, section 402 of Title IV, 29 U.S.C. § 482, provides that the Secretary has only sixty days from the date a union member files a complaint with him in which to investigate the complaint and institute suit. Because the Secretary has such a limited amount of time in which to investigate the allegations raised by a complainant, the Secretary might find it unnecessary or impractical to consult with complainants in every case. Quite appropriate-

---

11. Plaintiffs do not object to the Secretary's meeting with union officials. In their Memorandum in opposition, at p. 13, plaintiffs state:

"We do not object to Defendant Secretary's consultation with the union, particularly since there may be a possibility of settlement . . ."

ly, under section 402, *supra,* the manner of the Secretary's investigation is left for him to determine.

▇ Just as section 402, *supra,* imposes no duty on the Secretary to consult with complainants, neither does the Due Process Clause of the Fifth Amendment impose such a duty. The statutory scheme assures plaintiffs the requisite opportunity to be heard. Plaintiffs must file a complaint which apprises the Secretary of the grounds upon which plaintiffs contest the validity of the challenged election. The Secretary must investigate all of the allegations of that complaint. Judicial review assures that the Secretary will consider each and every allegation of the complaint and will state a rational reason for not filing suit. *Dunlop v. Bachowski,* 421 U.S. at 573, 95 S.Ct. 1851. Moreover, plaintiffs allege that the important issue in this case upon which the Secretary failed to consult with them is the timeliness of their challenge to the Committee's decision to conduct the rerun election, and we have heretofore determined that this decision of the Secretary was not arbitrary, capricious, an abuse of discretion, nor otherwise not in accordance with law.

Plaintiffs also allege that the Secretary has not taken sufficient precautions or implemented adequate procedures or standards for determining which claims shall be prosecuted, under section 402, 29 U.S.C. § 482, in violation of plaintiffs' rights under federal law and the United States Constitution. Plaintiffs also allege that the statutory scheme, "under which plaintiffs' right to sue the defendant union and union officials and members is subject to the broad and vaguely delineated discretion of the Secretary of Labor," on its face and as applied violates plaintiffs' rights to due process and equal protection of the laws.

While the Supreme Court has never addressed the discretionary power of the Secretary to bring suit in a constitutional context, the Court has spoken approvingly of that discretion on a number of occasions. *See, e.g., Dunlop v. Bachowski,* 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1965);

*Trbovich v. United Mine Workers of America,* 404 U.S. 528, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972); *Wirtz v. Bottle Blowers Association,* 389 U.S. 463, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968); *Calhoon v. Harvey,* 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964). While the Secretary has discretion in determining whether to institute suit under section 402, 29 U.S.C. § 482, he is bound by certain standards. The Secretary has a duty to institute suit if he finds that a violation of the LMRDA probably occurred, has not been remedied, and probably affected the outcome of the election. *See Dunlop v. Bachowski,* 421 U.S. at 568, 95 S.Ct. 1851. What constitutes a violation of the LMRDA is set forth in section 401 of Title IV, 29 U.S.C. § 481, and is further detailed in the Department of Labor's Rules and Regulations Governing the Election of Officers of Labor Organizations, 29 CFR § 452. The Secretary's discretion is therefore guided by these standards. His discretion is further tempered by the requirement of a statement of reasons, which must state a rational reason for the Secretary's decision not to institute suit. *Dunlop v. Bachowski,* 421 U.S. at 573, 95 S.Ct. 1851. The Court has reviewed the Secretary's statement of reasons, and has determined that the Secretary considered every allegation raised by the plaintiffs. The Court has further determined that the Secretary's decision not to institute suit was not arbitrary, capricious, an abuse of discretion, nor was it otherwise not in accordance with law. Accordingly, the Secretary has not violated plaintiffs' rights under federal law or the United States Constitution, and the statutory scheme, neither on its face nor as applied, violates plaintiffs' rights to due process of law.

▇ In Count Four, plaintiffs allege that the defendants violated plaintiffs' rights under Pennsylvania law. Neither plaintiffs' complaint nor their Memorandum alleges the provisions of Pennsylvania law which plaintiffs contend have been violated. In the event Count Four is alleging a pendent state law claim, in the exercise of our discretion we decline to consider any state law claim which plaintiffs may have.

Accordingly, the Court will enter an Order granting defendants' motions for summary judgment as to Counts One, Two, and Three of plaintiffs' complaint, and dismissing Count Four of the Complaint.