**James BALANOFF, Plaintiff,**

v.

**Raymond J. DONOVAN, Secretary of Labor, Defendant.**

No. 82 C 2466.

United States District Court, N.D. Illinois, E.D.

Sept. 9, 1982.

Leon M. Despres, Thomas Geoghegan, Despres, Schwartz & Geoghegan, Chicago, Ill., for plaintiff.

Edward J. Moran, Asst. U.S. Atty., Chicago, Ill., for defendant.

MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge.

On May 28, 1981 an election was held for the Directorship of District 31, United Steelworkers of America ("USWA"). Plaintiff James Balanoff, the incumbent, lost by a vote of 24,381 to 22,237. The winner was Jack Parton. Parton had previ-

ously served as President of Local 1014, a sub-unit within the jurisdiction of District 31.

It is Balanoff's belief that the May 28 election was tainted by numerous violations of federal law. Balanoff alleges that he is a "leader of dissidents within the USWA" and that his re-election bid "was opposed by all the principal" officers of the International USWA. (Complaint, ¶ 6). His substantive charges boil down to the following accusation:

> Determined to eliminate plaintiff as an elected official, the International Union directly used official union resources and assets to promote the candidacy of plaintiff's opponent, Jack Parton, or approved their use for that purpose.

(*Id.*)

Soon after the May 28 ballotting plaintiff invoked internal union remedies by filing an election protest with the appropriate USWA authorities. This protest was denied. Plaintiff then filed a timely complaint with the defendant Secretary of Labor under section 402 of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 482. Plaintiff petitioned the Secretary to initiate suit to void the May 28 election. The Secretary denied plaintiff's request and ruled that no action would be filed. The Secretary's reasoning was spelled out in a thirteen page "Statement of Reasons."

The instant lawsuit challenges the Secretary's refusal to initiate suit. Plaintiff argues that the Secretary's decision is arbitrary and capricious, and amounts to an illegal condonation of serious election irregularities. The Secretary responds with a motion to dismiss, or in the alternative for summary judgment, arguing that he properly rejected each of the numerous allegations Balanoff raised in his administrative complaint. Balanoff's reply consists of a cross-motion for summary judgment in which he challenges the Secretary's disposition of only two of his claims.[1] The Court will now rule on the legality of the Secretary's handling of these two charges.

## I. Plaintiff's Rights under the LMRDA

The LMRDA does not permit a defeated candidate such as Balanoff to sue directly to overturn the results of the election he lost. Only the Secretary of Labor is empowered to bring such an action. *Trbovich v. Mine Workers,* 404 U.S. 528, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972). Individuals in Balanoff's position can merely file with the Secretary (as Balanoff did here) a complaint requesting that litigation commence. The Secretary's obligations upon receipt of the complaint are two-fold: He "shall investigate" the complaint's allegations and he "shall" file suit against the offending union if his investigation discloses probable cause to believe that a violation of the LMRDA occurred which "may have affected the outcome of the election." 29 U.S.C. § 482(b); *see Wirtz v. Bottle Blowers, Assn.,* 389 U.S. 463, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968); *Howard v. Hodgson,* 490 F.2d 1194, 1197 (8th Cir. 1973).

Prior to the Supreme Court's decision in *Dunlop v. Bachowski,* 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975), it was unclear whether the courts had jurisdiction to examine a refusal by the Secretary to sue. The Secretary's position was that his decision was unreviewable; any other result, he argued, would undercut the Congressional scheme which places primary reliance on the Secretary's expertise in determining which post-election suits should go forward. The *Bachowski* Court rejected this claim as overbroad, holding that the Secretary had "failed to make a showing of 'clear and convincing evidence' that Congress meant to prohibit all judicial review of his decision." *Id.* at 568, 95 S.Ct. at 1858.[2] The Court agreed, however, that "a

---

1. Plaintiff has reserved the right to brief his remaining allegations once the present motions are ruled upon.

2. In *Bachowski,* as in this case, the plaintiff challenged an administrative decision not to sue. At least one court has held that there is also jurisdiction to test a decision by the Secretary in favor of suit. *Marshall v. Local 1010,*

congressional purpose narrowly to limit the scope of judicial review of the Secretary's decision can, and should, be inferred in order to carry out congressional objective in enacting the LMRDA." *Id.*

The *Bachowski* Court narrowed the allowable "scope of review" in two ways. First, it adopted the deferential "arbitrary and capricious" standard under which the Secretary's action can be set aside only if shown to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Second, the Court restricted the form of inquiry which can be made during an examination into the Secretary's behavior:

> Except in what must be the rare case, the court's review should be confined to examination of the "reasons" statement, and the determination whether the statement, without more, evinces that the Secretary's decision is so irrational as to constitute the decision arbitrary and capricious. Thus, review may not extend to cognizance or trial of a complaining member's challenge to the factual bases for the Secretary's conclusion either that no violation occurred or that they did not affect the outcome of the election.

*Dunlop v. Bachowski, supra,* 421 U.S. at 572–73, 95 S.Ct. at 1860–61.

The Court also gave some indication of the type of "rare" case in which a more sweeping inquiry would be appropriate:

> The Secretary himself suggests that the rare case that might justify review beyond the confines of the reasons statement might arise, for example, "if the Secretary were to declare that he no longer would enforce Title IV, or otherwise completely abrogate his enforcement responsibilities ... [or] if the Secretary prosecuted complaints in a constitutionally discriminatory manner ...." Other cases might be imagined where the Secretary's decision would be "plainly beyond the bounds of the Act [or] clearly defiant of the Act."

*United Steelworkers,* 498 F.Supp. 368, 374–75 (N.D.Ind.1980), *aff'd. on other grounds,* 664 F.2d 144 (7th Cir. 1981). The *Marshall* litigation involved plaintiff Balanoff.

*Id.* at 574, 95 S.Ct. at 1861 (citations omitted). The exact contours of the "rare" case concept remain unknown. However, one point is settled: A determination by the Secretary can never be upheld unless a sufficient statement of reasons is offered in support of his position. The Secretary must issue "a statement of reasons [which is] adequate to enable the court to determine whether the Secretary's decision was reached for an impermissible reason or no reason at all." *Id.* at 573, 95 S.Ct. at 1860.

### II. The alleged misuse of *Steelabor*

█ *Steelabor* is the official journal of the USWA. Plaintiff charges that the union's hierarchy violated 29 U.S.C. § 481(g) [3] by using *Steelabor* in an allegedly partisan manner to plaintiff's detriment. Plaintiff's charge is basically twofold:

(1) The editors of *Steelabor* afforded Parton "at least $20,000 to $40,000 in free publicity" (Plaintiff's Memorandum at 1) by running three stories in three different issues on the same subject—the opening of Local 1014's new union hall. In each story, Parton's name appeared several times. In two of them, he was pictured, once with Lloyd McBride, International President of the USWA.

(2) The editors of *Steelabor* imposed a virtual news blackout on plaintiff's activities.

In his Statement of Reasons denying plaintiff's complaint, the Secretary made several findings and conclusions with regard to the initial charge detailed above. The Secretary's ultimate conclusion was that the challenged articles did not evidence a violation of 29 U.S.C. § 481(g). However, with regard to plaintiff's second point, the Secretary made absolutely no findings whatsoever, though Balanoff had clearly raised the allegation in his petition to the

---

**3.** This provision forbids the use of union funds "to promote the candidacy of any person in an election subject to the provisions of this subchapter." 29 U.S.C. § 481(g).

Secretary.[4] For this reason, I believe that a remand to the Secretary for further findings is warranted. One of the very rationales for judicial review in this context is to "assure[ ] that the Secretary will consider each and every allegation of the complaint and will state a rational reason for not filing suit." *Hall v. Marshall,* 476 F.Supp. 262, 274 (E.D.Pa.1979), *aff'd. mem.,* 622 F.2d 578 (3d Cir. 1980); *see also id.* at 270–71; *Fletcher v. Dunlop,* 91 L.R.R.M. 2113 (N.D.Ill.1975). The *Bachowski* Court, in fact, expressly endorsed the remand approach in circumstances such as these:

> When the district court determines that the Secretary's statement of reasons adequately demonstrates that his decision not to sue is not contrary to law, the complaint union member's suit fails and should be dismissed. Where the statement inadequately discloses his reasons, the Secretary may be afforded opportunity to supplement his statement.

*Dunlop v. Bachowski, supra,* 421 U.S. at 574, 95 S.Ct. at 1861. (Citation omitted)

The Seventh Circuit has similarly acknowledged, albeit in a different context, that agency action cannot be upheld—even under the "arbitrary and capricious" standard—when it is apparent that significant claims have gone unanswered:

> In some circumstances, however, the record before an agency shows that significant questions were seriously contested. If the agency decision does not address these issues, even a restrained exercise of judicial review is impossible, and a remand for clarification is necessary.

*City Fed. Sav. & Loan Assn. v. Fed. Home Loan Bank,* 600 F.2d 681, 689 (7th Cir. 1979). It may very well be that the Secre-

tary viewed Balanoff's "blackout" claim as so insubstantial that no response was needed. *Cf. Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 770, 66 L.Ed.2d 722 (1981). Yet it is not at all clear from the materials properly before this court why such a conclusion, assuming it was made, was proper. *Compare Central Bank v. Smith,* 532 F.2d 37, 40 (7th Cir.) *cert. denied,* 429 U.S. 895, 97 S.Ct. 257, 50 L.Ed.2d 179 (1976). Under these circumstances, "courts do not supply connecting reasons on review." *City Fed. Sav. & Loan Assn. v. Fed. Home Loan Bank, supra,* 600 F.2d at 689.

I wish to emphasize that my decision to remand is not premised on a theory that the Secretary must respond to each and every point that is argued by a Section 402 complainant. As the Court held in *.Tomasselli v. Marshall,* 102 L.R.R.M. 2038, 2040 (S.D.N.Y.1979):

> Dunlop made it clear that the statement of reasons need not include extensive discussion of every possible issue and does not require the type of detailed findings of fact which plaintiffs urge here.

Still, all that the *Tomasselli* Court decided was that the Secretary need not state in minute detail his reasons for rejecting the complainant's interpretation of the evidence on a given charge. *See generally* Part III, *infra.* Nothing in either *Tomasselli* or *Bachowski* authorizes a complete failure by the Secretary to rule upon a form of behavior which is challenged. And clearly, such an omission cannot be countenanced here. The presence *vel non* of a "blackout" has been an important consideration in numerous decisions dealing with the legality of union publications.[5] Plaintiff's allegation

---

4. Balanoff's complaint contained the following charge:

   > My name received no mention in the articles [concerning Local 1014's union hall], although *Steelabor* usually includes a reference to the Director as a courtesy in such stories. Significantly, in the same issue, an article on the NIPSCO strike in which I played a leading role did not refer to me at all.

5. *Compare, e.g., New Watch-Dog Com. v. New York City Taxi Drivers U.,* 438 F.Supp. 1242, 1251 (S.D.N.Y.1977) (finding no violation, in

part, because "[t]here is no allegation that any bona fide and newsworthy Union activities of plaintiffs were deliberately excluded so as to deny them equal coverage") *with e.g., Hodgson v. United Mine Workers of America,* 344 F.Supp. 17, 22–23 (D.D.C.1972) (finding violation, in part, because of a failure to publicize one candidate's significant activities).

   I have not ruled separately upon the propriety of the Secretary's determination that the Parton articles were legal in themselves be-

warranted administrative findings and conclusions.

### III. The alleged extortion

■ Plaintiff further alleges that various officials of the International USWA extorted "contributions" from the Chicago-based staff of the International on behalf of the Parton campaign.[6] The Secretary gave the following reasons for not suing on this charge:

> The complainant alleged that the Staff Representatives were coerced into contributing $300.00 to the "McBride Team." The LMSA investigation failed to establish that the alleged coercion of $300.00 from the Staff Representatives was in any way connected with the District 31 Director race. A review of the Parton financial records disclosed no money contributed from McBride or the McBride Team. However, because the Department of Labor considers coercion of members to contribute funds to support a candidate to be very serious, the matter was referred to two different United States Attorneys who declined to prosecute. Even assuming that unlawful coercion took place, the investigation failed to show that it could have affected the outcome of the election for District 31 Director.[7]

In essence the Secretary assumed the existence of a violation, but concluded that no impact on the challenged election had re-

sulted. The Secretary reached the latter determination on the basis of one factual finding and one inference. He found that "the Parton financial records disclosed no money contributed from McBride or the McBride Team." He inferred from this finding that the allegedly extorted funds played no role in the election.[8]

Clearly, under *Bachowski,* the Secretary's factual characterization of the Parton records must be accepted. Plaintiff does not, in any event, challenge this finding. Plaintiff contests only the inference drawn by the Secretary, and the question before this court is thus narrow: Did the Secretary's factual finding constitute a "rational and defensible" basis (*DeVito v. Shultz,* 72 L.R. R.M. 2682, 2683 (D.D.C.1969)) upon which to conclude that the District 31 election was unaffected by the assumed extortion?

In support of a negative response to this question, plaintiff argues that the status of the Parton campaign records has little probative significance. They "were not maintained or kept under any legal requirement. They are not authoritative books of account. Even if they were, it would be unlikely that the 'McBride Team' made direct deposits to Parton, who claimed in the press that he was not receiving official union support." (Plaintiff's Memorandum at 42). At the very least, plaintiff continues, it was irrational for the Secretary to draw his inference without first subpoenaing the bank records of the "McBride Team,"[9] for

---

cause the Secretary may decide on remand to analyze *all* of plaintiff's *Steelabor* allegations together under a "totality of the circumstances" approach.

**6.** This allegation does not appear in plaintiff's original submission to the Secretary, nor in either of the two supplemental pleadings filed. Plaintiff informed the court that he learned of the alleged extortion during the course of the Department of Labor's investigation, and that he orally communicated this information to the Department. The Secretary agrees that the extortion charge was properly before him.

**7.** The "McBride Team" is described by plaintiff in the following manner:

> The "McBride Team" is the name of the political campaign organization which [Lloyd] McBride [, International President of the USWA] and other current International exec-

utive officers set up during the 1977 International elections. The "McBride Team" also refers to the team of candidates who ran with McBride in 1977 against [Edward] Sadlowski and his running mates.

(Plaintiff's Memorandum at 39). The Secretary does not dispute this characterization.

**8.** The Secretary, of course, made one other "finding"—that two different United States Attorneys declined to bring any charges on account of the alleged extortion. However, this "finding" appears relevant only to the issue of whether extortion in fact occurred, a point the Secretary was willing to assume.

**9.** *See* 29 U.S.C. § 521(b) (authorizing such a subpoena).

it is highly "rash" and "unreasoned" to assume "that the extortion of a Chicago area staffman by 'the McBride Team' in early April 1981 has nothing whatever to do with a Chicago-area USWA election a few weeks later, although it was the most publicized and contested USWA election in 1981." (*Id.* at 41). The weakness of such an assumption is further highlighted in plaintiff's view by the fact that neither McBride nor his "Team" had any apparent need for coerced contributions in 1981; McBride was then running unopposed for reelection to the International Presidency. (*Id.* at 43). Parton, by contrast, did have financial concerns for he was battling an incumbent in his bid to become Director of District 31. Parton publicly admitted, in fact, that he was receiving "financial support from the USWA staff." (*Id.* at 42).

The Secretary's response is that these assertions are irrelevant: By raising them, the plaintiff impermissibly seeks to expand the court's inquiry beyond the four corners of the "reasons statement." Balanoff, however, is not raising the type of challenge which *Bachowski* clearly forbids. He is not attacking the bona fides of the factual finding made by the Secretary to justify his conclusion that the election outcome was unaffected by the assumed extortion. *See Dunlop v. Bachowski, supra,* 421 U.S. at 573, 95 S.Ct. at 1860. The challenge here is only to an inference drawn by the Secretary, and nothing in *Bachowski* precludes examination of inferences. *See Fay v. Marshall,* 106 L.R.R.M. 2047, 2048 (D.Nev. 1980).

To be sure, *Bachowski* counsels that even inferences must be tested solely "on their face" and without recourse to "extraneous

issues which the Secretary might have discussed if he had been so minded but did not." *Bachowski v. Brennan,* 405 F.Supp. 1227, 1234 (W.D.Pa.1975) (on remand). Nevertheless, the facial significance of the facts relied upon by the Secretary may not always be apparent from a casual reading of the "reasons statement." A lay individual may ascribe great weight to a given piece of data, but that same fact may lose much of its significance when viewed from a more sophisticated vantage point. *Cf. United States v. Marchetti,* 466 F.2d 1309, 1318 (4th Cir.), *cert. denied,* 409 U.S. 1063, 93 S.Ct. 553, 34 L.Ed.2d 516 (1972). *Bachowski,* therefore, does not bar a plaintiff from raising considerations that aid the court in ascribing the appropriate weight to the facts cited by the Secretary.[10] Without such leeway, review under *Bachowski* loses much of its purpose and significance.

Nevertheless, the Secretary is entitled to judgment on the "extortion" phase of the case. Even if plaintiff's arguments are all factored into the analysis, plaintiff has established only that a more suspicious Secretary, upon hearing plaintiff's claims, might have pressed his investigation beyond a review of the Parton campaign records. However, this is not the standard by which to gauge plaintiff's entitlement to relief. To prevail, plaintiff must show a much more serious breach of duty, "a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971); *Alschuler v. Department of Housing and Urban Development,* 686 F.2d 472 (7th Cir. 1982). In my opinion, plaintiff has failed to carry this heavy burden. His arguments, while cause for concern,[11] are simply "not

---

**10.** Two types of "considerations" arguably fit within this broad definition: (1) those that show that the fact cited by the Secretary has no significance; and (2) those that show that other factors have greater significance. In the latter case the plaintiff essentially concedes that the cited fact supports the Secretary's position; the argument is only that the rebuttal evidence is stronger. This type of inquiry would seem to be barred by *Bachowski's* overriding requirement that a court review nothing more than the face of the "reasons statement."

"Outside considerations" should be recognized only to the extent they shed light on whether the "reasons statement" is itself an *internally* consistent and rational document. In light of my ultimate holding, I need not decide whether all of plaintiff's claims fit within the allowable first category defined above.

**11.** To fulfill his discretion in determining whether to sue to vacate a union election ... it is incumbent upon the Secretary that in performing an investigation into election challenges, he act with impeccable neutrality

significant for purposes of the narrow scope of judicial review to which this Court is limited." *Tomasselli v. Marshall, supra,* 102 L.R.R.M. at 2040. Judge Gesell's words, cited in *Bachowski,* bear repeating here:

[A]s a matter of law ... the Secretary is not required to sue to set aside the election whenever the proofs before him suggest the suit might be successful. There remains in him a degree of discretion to select cases and it is his subjective judgment as to the probable outcome of the litigation that must control.

*De Vito v. Shultz,* 72 L.R.R.M. 2682, 2683 (D.D.C.1969).

## IV. Order

Defendant's motion for summary judgment is granted, and plaintiff's cross-motion for summary judgment is denied as to all claims arising out of the Secretary's handling of extortion allegations. Both motions are denied without prejudice on the *Steelabor* question. This aspect of the case will be remanded to the Secretary for further findings as explained in this opinion. The parties shall report for status on September 17, 1982, at 9:30 a.m. to discuss a timetable for future action on this case.

---

*with a thoroughness that will engender confidence to all.*

*Valenta v. Brennan,* 90 L.R.R.M. 3316, 3323 (N.D. Ohio 1975) (emphasis added).