James **BALANOFF**, Plaintiff,

v.

Raymond J. **DONOVAN**, Secretary of Labor, Defendant.

No. 82 C 2466.

United States District Court, N.D. Illinois, E.D.

Feb. 18, 1983.

Leon M. Despres, Thomas Geoghegan, Despres, Schwartz & Geoghegan, Chicago, Ill., for plaintiff.

Edward J. Moran, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

By prior order, this litigation was remanded to the Secretary of Labor for consideration of plaintiff James Balanoff's assertion that he was a victim of a news "blackout" imposed by the editors of *Steelabor,* the official journal of the United Steelworkers of America (USWA). *Balanoff v. Donovan,* 549 F.Supp. 102 (N.D.Ill.1982) (*Balanoff I*). Balanoff, a former Director of District 31 of the USWA, lost a reelection bid to Jack Parton on May 28, 1981, and believes that the assertedly impermissible "blackout" was a substantial contributing factor in his defeat. Balanoff sues the Secretary over the latter's refusal to sue District 31 (under the authority of 29 U.S.C. § 482) for an order invalidating the May 28, 1981 election. *Dunlop v. Bachowski,* 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975).[1]

In response to this court's order, the Secretary filed a Supplemental Statement of Reasons addressing the "blackout" issue. The court finds that this Statement fails to disclose a "rational and defensible" basis for rejecting Balanoff's claim, (*DeVito v. Shultz,* 72 L.R.R.M. 2682, 2683 (D.D.C.1969)) and consequently orders a second remand for further supplemental proceedings.

The Secretary ruled in the alternative, finding first that Balanoff failed to exhaust his "blackout" claim during internal union proceedings:

> Pursuant to the Court's Order a review was made of the facts disclosed during the investigation of Mr. Balanoff's complaint. Re-examination of these facts disclosed that at no time during the pursuit of his internal union remedies did Mr. Balanoff object or protest in regard to any so-called blackout on the part of the editors of *Steelabor.* . . . Since plaintiff was aware of the alleged violation but failed to include a protest to the same during the exhaustion of his internal union remedies, the Secretary is precluded from instituting suit to set aside the election on the basis of that alleged violation in accordance [with] the Supreme Court's decision in *Hodgson v. Local 6759, [6799] United Steelworkers of America,* 403 U.S. 333 [91 S.Ct. 1841, 29 L.Ed.2d 510] (1971).

(Supplemental Statement of Reasons) This contention rests principally, if not entirely, on the Secretary's factual determination that Balanoff failed to raise the "blackout" issue before the union. For this finding to be upheld as non-arbitrary and non-capricious, sufficient support must appear in the administrative record. *Fay v. Marshall,* 106 L.R.R.M. 2047, 2048 (D.Nev.1980); *Fletcher v. Dunlop,* 91 L.R.R.M. 2113 (N.D.Ill.1975).

The record, to the extent it pertains to the exhaustion question, consists of "(1) Balanoff's complaints to the union . . .; (2) the transcript of the union hearing at which Balanoff's complaint was considered; (3) the written reports of interviews which were conducted of Balanoff and of other persons during the investigation." (Affidavit of Richard G. Hunsucker, Director of the Office of Labor-Management Standards Enforcement, United States Department of Labor) The transcript referred to above details the hearing Balanoff received on July 31, 1981 before the International Tellers of the USWA. Balanoff appealed the Tellers' adverse decision to the Internation-

1. The background facts are set out fully in *Balanoff I.*

al Executive Board of the USWA. The Board heard Balanoff on August 31, 1981, and rejected his arguments the same day. No transcript of the August 31 hearing was ever prepared.

Admittedly, neither Balanoff's written complaints nor the transcript of July 13 hearing contains a reference to a "blackout" claim. Neither document, however, casts light on whether Balanoff raised the issue orally, as he claims, on August 31. The written interview reports contain the only evidence in the administrative record on this point.

Investigator Kenneth L. Zeeb interviewed Balanoff on October 16, 1981. Zeeb's "Report of Interview" contains the following passage:

> Regarding Balanoff's allegation concerning the use of Steelabor as a campaign tool for Parton, he stated that the USWA Executive Board considered this allegation on August 31, 1981. He stated that the past District # 33 Director, Lynus Wampler, would back-up this statement, and that possibly District # 38 Director Bob Petris would also verify his statement.

Zeeb interviewed Wampler by telephone, and learned the following information:

> After the District 30 decision, the Executive Board heard the appeal of James Balanoff of District 31. As part of his appeal, Balanoff protested two articles which featured his opponent, Jack Parton, which were contained in two consecutive editions of Steelabor in late 1980.

The final document in the record is a memorandum to the files authored by Zeeb concerning an interview between William Kane, a Labor Department official located in Pittsburgh, and James D. English, Asso-

ciate General Counsel of the USWA. Kane told Zeeb:

> English stated that the Board considered the Article of the Local 1014 "McBride Hall" Dedication which appeared in the November 1980 edition of Steelabor. English stated that he could not recall if the Board considered the "McBride Hall" Dedication Article which appeared in the December, 1980 edition of Steelabor.

These documents establish, according to the Secretary, that Balanoff complained only about the favorable publicity Parton had received in Steelabor. Because no witness explicitly stated that Balanoff had also complained about a "blackout," the Secretary concludes that no such complaint was in fact registered.

The court finds this reasoning unpersuasive for the simple reason that it is doubtful that the three interviews were conducted with sufficient precision to elicit useful information. Prior to the proceedings conducted on remand, the Secretary had shown no interest whatsoever in Balanoff's "blackout" charge. The allegation had been simply ignored, and, indeed, this was the very reason why the remand was ordered. *Balanoff I,* 549 F.Supp. at 104–06. The Secretary cannot now rely on the failure of his investigation to generate particular factual information when that information was not relevant to the questions thought to be at issue when the investigation was conducted.[2] The reports cited by the Secretary are an insufficient basis for the conclusion he draws.[3]

██ In the alternative, the Secretary dismisses Balanoff's "blackout" allegation on the merits:

> In the 19 issues of Steelabor published between May 1979 and December 1980

---

**2.** This would be a much different case if the administrative record revealed affirmative statements that Balanoff never complained about his lack of coverage in *Steelabor.* The Secretary relies wholly on omissions in the record.

**3.** On remand, the Secretary may, if he chooses, investigate the circumstances of August 31 hearing further in order to find evidence sup-

porting his position. If such evidence is found and relied upon, it would be helpful for the Secretary to include in his Second Supplemental Statement of Reasons a discussion of whether the protests Balanoff concededly made on August 31 were sufficient in any event to exhaust his "blackout" assertion. *See Hodgson v. Steelworkers,* 403 U.S. 333, 340, 91 S.Ct. 1841, 1846, 29 L.Ed.2d 510 (1971).

(both inclusive; not including February 1979), Balanoff's name appeared approximately 38 times and his picture appeared 19 times as opposed to 17 and 7, respectively, for Parton. No articles or pictures of either Balanoff or Parton were contained in the issues of *Steelabor* published between January and April 1981, prior to the election.

The issue is whether the Secretary's conclusion that no "blackout" occurred is adequately supported by the findings cited above.[4]

The court assumes that the Secretary structured his analysis along the December 1980 dividing line due to a belief that that District 31 election campaign began in earnest only after the start of 1981.[5] As a matter of general principle, the attempted division was appropriate, for as the court reads the administrative complaint filed with the Secretary, Balanoff's challenge goes only to the manner in which *Steelabor* reported, or failed to report, his activities during the campaign.[6] However, the Secretary has supplied absolutely no facts justifying his determination of when the election actually began. This is not a quibbling point. If, as Balanoff proposes, the starting point is moved back only slightly, to November 1980, the numbers, according to plaintiff's representations, come out quite differently: Between November 1980 and April 1981 Balanoff's name appeared twice and his picture once, while Parton attained totals of 9 and 3, respectively. (Exhibit A

to Affidavit of Elizabeth Balanoff) An intelligent analysis of Balanoff's claim requires an initial determination of the relevant period under scrutiny. The Secretary's Supplemental Statement discloses no basis for the implicit judgment he reached.

Moreover, even if the Secretary's selection of the campaign period is accepted, the statistics cited in the Supplemental Statement point *away* from the Secretary's ultimate conclusion. For these figures disclose that in the period preceding the election campaign Balanoff's name appeared twice per issue of *Steelabor,* and his photograph once. Yet once the election period began, both averages dropped to zero. This sudden drop suggests that during the election campaign (as seemingly defined by the Secretary) Balanoff did not receive the coverage that might be expected of such a high-ranking leader of the USWA. Furthermore, that Parton also went unmentioned and unpictured during this interval is, on the record thus far developed, irrelevant. Parton was then only a president of a union local. His position was subordinate to Balanoff's, and it is thus neither surprising nor probative that he appeared no more often than the plaintiff.[7] The comparison drawn by the Secretary does not adequately support the conclusion that Balanoff received fair coverage during the campaign of his union-related, non-partisan activities.[8]

For the reasons stated, the case is remanded to the Secretary of Labor for further action on plaintiff's "blackout" allega-

4. The overriding issue in this case is, of course, whether, in light of *all* of plaintiff's allegations, the Secretary rationally dismissed plaintiff's charge that *Steelabor* was used in violation of 29 U.S.C. § 481(g). Given the deficiencies to be noted in the Secretary's handling of the "blackout" aspect of this assertion—a significant portion of plaintiff's overall claim—the court declines to reach a final judgment on the *Steelabor* question.

5. The Secretary's initial Statement of Reasons supports this belief. There, the Secretary considered Balanoff's assertion that two articles appearing in the November 1980 and December 1980 issues of *Steelabor* constituted little more than free campaign publicity for Parton. The Secretary rejected this claim, in part, because "the articles are remote in time from the actual

election as they appeared six months prior to it."

6. *See also* Affidavit of James Balanoff at ¶ 7 (asserting that he made the following remark before the USWA Board at the August 31, 1981 hearing: "In my campaign, I got totally knocked out of the box in *Steelabor.* I got no publicity.")

7. However, the converse (Parton's appearing more often than Balanoff) might be significant. *See* p. 965, *supra.*

8. The court further notes that the Secretary never responded to Balanoff's specific assertions of a "blackout." *See Balanoff I,* 549 F.Supp. at 105 n. 4.

tion. The Secretary shall either initiate suit in accordance with plaintiff's request or file a Second Supplemental Statement setting forth his reasons for rejecting such a course of action. If the Secretary chooses the latter route, his Statement must be filed on or before March 21, 1983. The parties shall report for status on March 22, 1983 at 9:30 A.M.

It is so ordered.