Thomas DOYLE, Plaintiff,

v.

William BROCK, Defendant.

Civ. A. No. 85–0616.

United States District Court, District of Columbia.

March 4, 1986.

Paul Alan Levy, Alan B. Morrison, Public Citizen Litigation Group, Washington, D.C., for plaintiff.

Joseph E. DiGenova, U.S. Atty., Royce C. Lamberth, Asst. U.S. Atty., John H.E. Bayly, Jr., Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, Senior District Judge:

Section 402(b) of the Labor-Management Reporting and Disclosure Act ("LMRDA" or "Act"), 29 U.S.C. § 482(b) (1982), gives the Secretary of Labor authority to file civil actions challenging union elections already conducted "if he finds probable cause to believe that a violation of [the Act] has occurred and has not been remedied." Section 403 makes that authority exclusive. 29 U.S.C. § 483.

Plaintiff Thomas Doyle protests the Secretary's decision not to challenge and seek to overturn a June 1984 election held by Local 6 of the International Brotherhood of Electrical Workers ("Local 6"). Doyle seeks relief from this Court directing the Secretary either to commence a civil action on his behalf against the union or to provide a more satisfactory Statement of Reasons for his decision not to do so. Before the Court are the parties' cross-motions for summary judgment.

After considering the legal memoranda and the supporting documentation submitted by counsel, and for the reasons set out below, the Court determines that the plaintiff is entitled to summary judgment.

## BACKGROUND

In May of 1984, plaintiff Doyle was nominated as a candidate for the Executive Board of Local 6. However, he was ruled ineligible as a candidate because of a bylaw provision that a nominee must attend at least one-half of the regular meetings held

in the year preceding the nominations.[1] It was determined from an attendance register that Doyle had attended only two meetings in the preceding year and thus was ineligible. Alleging that he had actually attended more than the required number of meetings, even though he had not signed the register, Doyle first pursued internal union remedies. He then filed a complaint with the Secretary of Labor.

After an investigation, the Secretary declined to file suit on Doyle's behalf, announcing his decision in a Statement of Reasons issued in December 1984. Doyle's counsel then requested the Secretary to reconsider his decision. On February 15, 1985, Richard Hunsucker, Director, Office of Elections, Trusteeships and International Union Audits of the Department of Labor ("DOL"), responded to and denied the request on behalf of the Secretary ("Hunsucker letter"). This lawsuit, filed on February 20, 1985, was a response to the Secretary's decision.

## DISCUSSION

### I. The Standard of Review

█ Unlike many agency decisions relating to enforcement or prosecutorial action, the Secretary of Labor's decision whether to file suit under section 402 of the LMRDA is not immune from judicial review. *See Heckler v. Chaney*, —— U.S. ——, 105 S.Ct. 1649, 1657, 84 L.Ed.2d 714 (1985). In *Dunlop v. Bachowski*, 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975), the Supreme Court held that the Secretary's disposition of a union member's complaint should be reviewed under the "arbitrary and capricious" standard of section 706(2)(A) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A). The majority found, however, that while the intent of the LMRDA was not to preclude

altogether judicial review of the Secretary's action, a court cannot simply substitute its judgment for the Secretary's. The Secretary is required only to provide a concise "statement of reasons" supporting his decision not to file suit such that a reviewing court can determine if there is a rational and defensible basis for the decision. "[T]he court's review should be confined to examination of the 'reasons' statement, and the determination whether the statement, without more, evinces that the Secretary's decision is so irrational as to constitute the decision arbitrary and capricious." 421 U.S. at 572–73, 95 S.Ct. at 1860–61. Accordingly, a trial-type hearing on challenges to the factual bases of the Secretary's decision is not permitted. But the statement of reasons must be sufficient "to enable a court to determine whether the Secretary's decision was reached for an impermissible reason or no reason at all." *Id.* 421 U.S. at 573, 95 S.Ct. at 1861; *Accord Donovan v. Local 6, Washington Teacher's Union*, 747 F.2d 711, 715 (D.C. Cir.1984).

Before turning to the merits of Doyle's challenge under this standard, it is appropriate to consider what might be termed an evidentiary dispute. The Secretary argues that the standard of review outlined in *Bachowski*, characterized by our Circuit Court as "much narrower than applies under [§ 706(2)(A) of the APA]," *Usery v. Local Union No. 639, International Brotherhood of Teamsters*, 543 F.2d 369, 378 (D.C.Cir.1976), *cert. denied*, 429 U.S. 1123, 97 S.Ct. 1159, 51 L.Ed.2d 573 (1977), precludes the trial court from considering the findings and recommendations of the Secretary's investigators.[2] This interpretation stretches the cautionary language of *Bachowski* too far.

---

1. This requirement is contained in Article III, section 9(f) of the bylaws of Local 6. Article III, section 9(g) allows members to receive credit for meetings they did not attend by filing an acceptable excuse with the Executive Board within 30 days of the meeting.

2. The plaintiff obtained copies of the Department of Labor's file on his complaint, including the initial investigator's report and memoranda regarding the advisability of filing suit through a Freedom of Information Act request. These documents were submitted to the Court as exhibits to the plaintiff's motion for summary judgment.

*Bachowski* requires the trial court to scrutinize the reasons for the Secretary's decision but prohibits the challenge of *factual* findings that led to that decision. In this way, it provides a narrower task than in many administrative cases where factual findings may be overturned if not supported by substantial evidence. *See* 5 U.S.C. § 706(2)(E). *Bachowski* does not, however, limit the materials that a court may consider in reaching its determination, at least to the extent suggested by the government. For example, in a recent ruling—*Donovan v. Local 6, supra,* our Circuit Court reviewed under the *Bachowski* standard the Secretary's decision to certify a union election as valid. An unsuccessful candidate claimed that insurgent candidates had been prevented from distributing campaign literature and gathered "numerous affidavits" recounting specific examples of such incidents. The Circuit Court found insufficient the Secretary's statement of the reasons for his decision to certify the election in spite of these incidents. It held that the Secretary had not offered a satisfactory explanation for his decision not to credit the affidavits. Thus, the statement of reasons was evaluated not in a vacuum but in light of the evidence available to the Secretary and the court. *See Donovan v. Local 6,* 747 F.2d at 718–19.

■ A similar situation is presented here. The investigative findings of the DOL were available to and utilized by the Secretary when he decided against pursuing Doyle's complaint. It is proper for this Court to consider them in determining the sufficiency of the reasons advanced in support of the decision. They will help determine whether the statement of reasons is internally consistent and rational. *See Balanoff v. Donovan,* 549 F.Supp. 102, 107 & n. 10 (N.D.Ill.1982).

## II. The Merits

Doyle challenges the Secretary's two statements of reasons [3] explaining the decision not to file suit on a number of grounds. First, noting that the meeting attendance bylaw which prohibited his candidacy excludes 97 percent of the membership from nomination, he argues that the statements fail to explain rationally the refusal to file suit since a bylaw having such an effect is not a reasonable qualification for union office and is therefore unlawful under section 401(e) of the LMRDA, 29 U.S.C. § 481(e).[4] Furthermore, the statements do not, and cannot, under current case law, identify a legitimate purpose of the bylaw that outweighs its anti-democratic effect.

Doyle next argues that the Secretary failed to explain adequately his decision allowing the union to base the disqualification solely on the attendance roster. He claims that Local 6 was required under the Secretary's own regulations to expressly state in its bylaws the means of determining candidate eligibility, and that the statements do not adequately explain the Secretary's conclusion that he could not carry the burden of proof on the question of whether Doyle actually attended enough meetings to qualify for nomination. Finally, Doyle criticizes the Secretary's cursory attention in the Department's statements to the discriminatory application of the sign-in requirement and excuse provisions to rank and file members as opposed to Local 6 officers.[5]

---

**3.** Both parties treat the Secretary's December 1984 statement of reasons and the February 15, 1985 Hunsucker letter as statements that must be reviewed by this Court. These documents are attached as Exhibits A & B to this opinion.

**4.** 29 U.S.C. § 481(e) provides in pertinent part: "In any election required by this section ... every member in good standing shall be eligible to be a candidate and to hold office (subject to ... reasonable qualifications uniformly imposed)."

**5.** The DOL's investigation revealed that incumbent officers could be excused from attending meetings simply by calling another officer who would sign his name to the attendance register. On occasion, absent incumbent officers were telephoned after the meetings to get their excuses. Plaintiff's Memorandum in Support of Motion for Summary Judgment, Exhibit 7, at 5.

In response, the Secretary relies primarily on the narrow *Bachowski* standard of review and contends that the statements of reasons adequately explain the final decision not to file suit and that the decision was rational under the circumstances. The Court must, therefore, consider the law applicable to Doyle's challenges and determine whether the Secretary's statements are indeed a rational response to them.

**A.**

Doyle's first argument turns essentially on a single question: Can the meeting attendance requirement, when viewed together with the "liberal" excuse provision, be a "reasonable qualification" for union office under section 401(e) of the LMRDA, when it has the effect of excluding 97 percent of the members from pursuing a candidacy? If the answer to this question is "no," then the decision not to file suit was arbitrary and irrational. If the answer is "yes," then the statements of reasons must provide a cogent explanation for that answer.

■ As the Supreme Court and the courts of appeals have often stated, the "reasonable qualifications" language of the Act is not to be given broad reach. *See, e.g., Local 3489, United Steelworkers of America v. Usery,* 429 U.S. 305, 309, 97 S.Ct. 611, 614, 50 L.Ed.2d 502 (1977) (quoting *Wirtz v. Hotel, Motel & Club Employees Union, Local 6,* 391 U.S. 492, 499, 88 S.Ct. 1743, 1748, 20 L.Ed.2d 763 (1968)); *Donovan v. Local Union No. 120, Laborers' Int'l Union of North America,* 683 F.2d 1095, 1102 (7th Cir.1982). This is because Title IV of the Act was intended to guarantee free and democratic union elections, modeled on our national political elections. The prevention of corruption and abuses of union power by the leadership, the overriding purpose of the Act, is best accomplished through such free elections. *Steelworkers,* 429 U.S. at 309–10, 97 S.Ct. 614–15. The reasonableness of any qualification for candidacy must be measured against the legislative purposes of the LMRDA. *Local Union No. 120,* 683 F.2d at 1102.

Meeting attendance requirements, such as contained here in the Local 6 bylaw, are frequently imposed as a qualification for elective office. The usual purported justification for such requirements is that they ensure that candidates will be properly informed on issues of importance to union governance. However, in *Steelworkers* this justification was specifically questioned: "[T]he election provisions of the LMRDA express a congressional determination that the best means to this end is to leave the choice of leaders to the membership in open democratic elections, unfettered by arbitrary exclusions." 429 U.S. at 312, 97 S.Ct. at 616. *See also Donovan v. Sailors' Union of the Pacific,* 739 F.2d 1426, 1429–30 (9th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 1866, 85 L.Ed.2d 160 (1985), ("[Congress intended] that the good judgment of union members in casting their votes should be the primary determinant of whether a candidate is qualified for office."). When meeting attendance rules disqualify a large portion of the membership from running for office, it is particularly difficult to find that they are consistent with the goal of free and democratic elections. In such cases, the requirements have failed to encourage attendance, the supposed reason for their existence, and they arbitrarily and severely "restrict[ ] the free choice of the membership in selecting its leaders." *Id.* 429 U.S. at 310, 97 S.Ct. at 615. Courts have consistently struck down not only meeting attendance requirements, but also other election bylaws that exclude the major portion union's membership. *Donovan v. Illinois Education Ass'n,* 667 F.2d 638, 641 (7th Cir.1982) ("We have found no recent decision upholding a candidacy qualification that excluded a majority of the union's membership, however reasonable the qualification may have seemed.").[6]

---

**6.** In a case subsequent to *Illinois Education Ass'n,* a district court did uphold a one year good-standing requirement despite its exclusion of 70 percent of the union's membership. *See Donovan v. Local 500, Transport Workers Union of America,* 111 L.R.R.M. (BNA) 2499 (S.D.Fla.

The Secretary's investigation of the challenged bylaw revealed that only 3 percent of the membership was eligible for nomination. Even though the area administrator for the DOL's San Francisco office recommended that this fact alone justified filing suit,[7] the Secretary's Statement of Reasons doesn't mention it at all. The Statement simply says: "The local's meeting attendance rule is reasonable on its face, particularly in view of the liberality of the excuse provisions." Statement at 2. Doyle's counsel noted the obvious inadequacy of this comment in his letter requesting reconsideration. In response, the Hunsucker letter states: "If the Department concluded that the rule is reasonable, it will not initiate litigation solely because the rule's effect is to disqualify a vast percentage of the membership from running for union office." Hunsucker letter at 1.

■ Absent from the response is a precise explanation of *how* the DOL concluded that the rule was reasonable under applicable case law, especially given the following language from *Steelworkers:* "[A]n attendance requirement that results in the exclusion of 96.5 percent of the members from the candidacy for union office hardly seems to be a 'reasonable qualification' consistent with the goal of free and democratic elections." *Steelworkers*, 429 U.S. at 310, 97 S.Ct. at 615. The only indications of the Secretary's reasoning come from the brief mention in the original Statement of the liberal excuse provision of article III, section 9(g) of the bylaws, and the reference in the Hunsucker letter to DOL regulations stating that the reasonableness of a meeting attendance requirement is determined through a consideration of all of the circumstances of a particular case. *See* 29 C.F.R. § 452.38 (1985). It appears, therefore, that the Secretary decided the qualification in this case was reasonable because of the excuse provision.

It is true that the "nature, availability and extent of excuse provisions" is mentioned in the regulations as a factor that will influence the Secretary's view of a meeting attendance requirement. *Id.* The courts, however, have never accepted the argument that liberal excuse provisions can save requirements that exclude the greater part of a union's membership. In *Marshall v. Local 1402, International Longshoremen's Ass'n of Tampa, Florida*, 617 F.2d 96 (5th Cir.1980), for example, a union argued that a meeting attendance bylaw that resulted in the disqualification of nearly 94 percent of its membership was nonetheless reasonable because to get credit for attendance, a member need only call the union office in advance of the meeting. Rather than distinguishing the case from *Steelworkers*, the court held, the liberal excuse provision undermined the only possible legitimate purpose asserted on behalf of the bylaw. If a member can get credit for attendance so easily, the bylaw can scarcely be said to encourage meeting attendance and therefore a familiarity with union affairs. 617 F.2d at 98; *see also Usery v. Local Division 1205, Amalgamated Transit Union*, 545 F.2d 1300, 1304 n. 3 (1st Cir.1976).

When presented with this argument in the plaintiff's reconsideration request, the Secretary responded not by relying on contrary legal authority, but rather by citing cases from a summary sheet of DOL investigations of other complaints, some of which involved meeting attendance requirements that excluded the vast majority of union members. The summaries indicate that many of these investigations were terminated without the filing of a lawsuit because of liberal excuse provisions. Simply because the Secretary was following his own "precedent," however, does not make his decision rational. Indeed, there is no indication that decisions not to file suit on the basis of these other complaints were

1982). Interestingly, the Secretary in that case argued that the requirement was *per se* unreasonable because it excluded that many members. *Id.* at 2500.

7. See Plaintiff's Memorandum in Support of Motion for Summary Judgment, Exhibit 5.

challenged in, much less upheld by, the courts.

The simple fact is that even though the liberal excuse provision in this case may have been intended to ensure broad eligibility for union office, it failed to do so. Even with the provision, of which the members were supposedly aware, 97 percent of the membership was ineligible to run for office. Given that every recorded court decision in cases involving the exclusion of that high a percentage of members points in only one direction, and that the statement of reasons offer no rational explanation for why this case is any different, the Secretary's decision not to move to overturn the election can only be viewed as so irrational as to be arbitrary and capricious.[8]

### B.

■ The second group of arguments presented by the plaintiff concern the decision of Local 6 to determine presence at meetings only by reference to written attendance rosters and the application of the excuse provision to the rank and file members as opposed to officers. In view of the resolution of the more general challenge to the meeting attendance requirement, a detailed analysis of these more specific claims is unnecessary. Indeed, this Court believes the first of these specific challenges is more than sufficient to find the statements of reasons arbitrary and capricious.

Article III, § 9(f) of the bylaws requires that potential candidates "attend" at least one half of the regular Union meetings in the twelve month period preceding nominations. In ruling that Doyle was an ineligible candidate based on this bylaw, Local 6 relied solely on the attendance rosters made available for members to sign during the meetings.

The regulations promulgated concerning "reasonable qualifications" for union office under 29 U.S.C. § 481, provide in part:

> An essential element of reasonableness is adequate advance notice to the membership of the *precise terms* of the requirement. A qualification which is not part of the constitution and bylaws or other duly enacted rules ... may not be the basis for denial of the right to run for office.... [Qualifications] must contain specific standards of eligibility by which any member can determine in advance whether or not he is qualified to be a candidate.

29 C.F.R. § 452.53 (1985) (emphasis added). The specific requirement that notice must be given to the *membership* through publication in the bylaws or other duly enacted rules is consistent with the admonition in *Steelworkers* that the purposes of the LMRDA transcend the interests of an individual union member. *See* 429 U.S. at 309, 97 S.Ct. at 614. Thus, the necessity of general advance notice of a requirement is not alleviated by a particular individual having notice.

The Secretary's Statement barely mentions the decision of the Union to rely only on the sign-in registers. It provides only:

> [T]he local did not violate its own constitution and bylaws or the Act by relying on its records, rather than recollections of members about who attended meetings. As the complainant had signed the meeting attendance roster on two occasions he was aware of the need to sign in at meetings he attends.

Statement at 2. Whether the Union violated its own bylaws is not the issue raised by the reliance on its written records only; the issue is whether such reliance violated the "reasonable qualifications" language of the LMRDA as interpreted by the DOL's regu-

---

**8.** The Supreme Court decided in *Steelworkers* that by allowing "reasonable" qualifications, Congress envisioned a flexible approach and therefore did not intend that the Secretary issue regulations defining exactly what qualifications would be challenged. 429 U.S. at 313, 97 S.Ct.

at 616. The Secretary's "flexibility," however, does not extend to ignoring applicable caselaw, most of which, it should be noted, was established in cases where the Secretary himself was challenging restrictive union candidacy requirements.

lations. Doyle's personal awareness of the requirement has no relevance to this issue.[9]

While the meeting attendance requirement in this case was published as a bylaw, the requirement that a member sign the register at each meeting to demonstrate attendance was not. The "precise terms" of the meeting attendance requirement were thus not made known in advance. A member who actually attended the required number of meetings could not determine with certainty his or her eligibility without knowing of this additional unpublished requirement.

■ An agency's application of its own regulations is usually entitled to deference, but there are limits to that deference. Agency action inconsistent with the regulations must be overturned. *Shepard v. Merit Systems Protection Board*, 652 F.2d 1040, 1043 (D.C.Cir.1981). The meeting attendance requirement as applied by the Union was "unreasonable" under the Department's own regulations. Ignoring Doyle's challenge to the requirement on this basis was irrational and arbitrary.

### III. Remedy

*Bachowski* indicates that when a district court believes that a statement of reasons is inadequate, it may require that the Secretary furnish additional and satisfactory justification for not filing suit on behalf of a complaining union member. 421 U.S. at 574, 95 S.Ct. at 1861. At a certain point, however, no statement of reasons can justify the decision not to file suit; in such cases the decision is arbitrary and capricious and must be overturned. *See id.* 421 U.S. at 575, 95 S.Ct. at 1861.

■ The appropriate remedy, however, presents a difficult problem. Plaintiff suggests that an order be entered directing the Secretary to initiate suit. This would be an

unusual and troubling step, involving complex issues not resolved in *Bachowski*, 421 U.S. at 575 & n. 12, 95 S.Ct. at 1862 & n. 12, or subsequent cases. *See Sadlowski v. Marshall*, 464 F.Supp. 858, 863–64 (D.D.C. 1979); Note, *Dunlop v. Bachowski and the Limits of Judicial Review Under Title IV of the LMRDA*, 86 Yale L.J. 885, 900–03 (1977). These issues would be best considered with the benefit of the views of counsel for the parties. The Secretary is therefore directed either to initiate suit in accordance with the plaintiff's request or provide a supplemental statement of reasons for not doing so. *Balanoff v. Donovan*, 569 F.Supp. 962, 966 (N.D.Ill.1983). If the Secretary decides not to bring suit, the parties will be asked to brief the issue of the appropriate remedy.

Under the facts and circumstances presented thus far, it appears unlikely that a rational and acceptable explanation for not bringing suit can be advanced. If such cannot be done, the Secretary should reconsider his decision in light of this opinion and avoid further delay or judicial intervention by "proceed[ing] appropriately without the coercion of a court order." *Bachowski*, 421 U.S. at 576, 95 S.Ct. at 1862. The Court's concern is that the purposes of the LMRDA not be frustrated by "endless litigation concerning the sufficiency of the written statement." *Id.* 421 U.S. at 575, 95 S.Ct. at 1861. It would not be appropriate to allow recalcitrance to succeed where rational decisionmaking cannot. *State Farm Mutual Auto Insurance v. Department of Transportation*, 680 F.2d 206, 241 (D.C. Cir.1982), *vacated on other grounds sub nom. Motor Vehicle Manufacturers' Ass'n v. State Farm Mutual Auto Insurance*, 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).

An appropriate order will be entered in accordance with this opinion.

---

9. Furthermore, the Secretary's conclusion that Doyle was aware of the sign-in requirement is hardly self-evident. That Doyle signed the register on two occasions certainly indicates that he knew of its existence, but not that he knew it was the only way he could demonstrate attendance at Union meetings for purposes of qualifying for a future election.

EXHIBIT A

June 19, 1985

Statement of Reasons For Denying the Complaint of Thomas Doyle Concerning the Election Conducted By Local 6, International Brotherhood of Electrical Workers On June 20, 1984 San Francisco, California

The investigation conducted pursuant to the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 401 *et seq.* (Act), disclosed the following with respect to the matters alleged by the complainant in his protest to the union and his complaint to the Secretary of Labor.

The subject local conducted its regular triennial election of officers on June 20, 1984. The complainant was a candidate for Delegate to the International Convention of the International Brotherhood of Electrical Workers (the International). Because the International's officers will be elected at the convention, Title IV of the Act applies to the election of delegates. The complainant also sought to be a candidate for a position on the local's Executive Board, an officer position for purposes of the Act.

In a handwritten note dated May 21, 1984 and left at the local's office, the complainant asked to be informed in writing of the appeals process available to him to protest his disqualification from the ballot. In a letter to the complainant dated May 22, 1984, Mr. Franz E. Glen, the local's Business-Manager/Financial Secretary, informed him that there was no appeals process. The International's Constitution contains no specific provisions for election protests, however, Article XVII, Sections 12–16 provide a general "appeals" procedure. Clearly, these sections apply to disputes about local union elections, along with other kinds of disputes between a local and its members.

The nominations meeting for the subject election was conducted on May 9, 1984. The complainant sought to be a candidate for the Executive Board but was disqualified based upon the local's meeting attendance rule. He invoked his internal union remedies the next day by means of a letter to the local complaining about his disqualification.

On May 12, 1984 the complainant wrote to International Vice President S.R. McCann to protest his disqualification from the ballot. McCann responded by letter dated June 6, 1984, stating that he concurred with the Election Committee in holding that the complainant did not attend the required number of meetings prior to nominations as contained in Article 3, Section 9(f) of the local 6 Bylaws.

On June 9, 1984, the complainant wrote to International President Charles H. Pillard to appeal from the decision of the International Vice President. Pillard responded to the complainant's appeal by letter dated July 2, 1984, denying the appeal.

Under Article XXVII, Section 16 of the International Constitution, the International President's decision was appealable to the International Executive Committee, but such an appeal should have been made within 30 days after the International President's decision.

As the local's letter of May 22, 1984 substantially contributed to the complainant's confusion, the International President should have corrected the complainant's misimpression and informed him of his right to appeal to the International Executive Committee within 30 days. Because the International President did not correct the complainant's misimpression, the complainant's failure to appeal to the International Executive Committee will be excused and the complainant's allegations will be considered on their merits.

The complainant alleged that he should not have been disqualified from candidacy for the office of Executive Board member. Article II, Section 9(f) of the local Bylaws requires a member to attend at least one-half of the local's regular meetings during the 12 months preceding nominations. Very liberal excuse provisions are applied.

Members are required to sign an attendance roster at each meeting they attend. The local's meeting attendance rule is reasonable on its face, particularly in view of the liberality of the excuse provisions.

An examination of the meeting attendance roster shows that the complainant attended two of the twelve monthly meetings during the year preceding nominations. At one other meeting the minutes show that the complainant made a motion, although the meeting attendance records do not reflect his presence at that meeting. The investigation established some evidence, by no means conclusive, that the complainant attended three other meetings, or at least that some members believe they saw the complainant at the minimum of six meetings in the year prior to nominations. It is considered that the local did not violate its own constitution and bylaws or the Act by relying on its records, rather than recollections of members about who attended meetings. As the complainant had signed the meeting attendance roster on two occasions he was aware of the need to sign in at meetings he attends. Therefore the evidence did not establish that the complainant had complied with the union's meeting attendance rule and he was correctly declared ineligible.

The complainant alleged that the local violated his right to inspect the local's membership list and to the local's assistance in mailing his campaign literature. Section 401(c) of the Act gives to candidates for union office the right, upon request, to inspect the union's membership list and also to have the assistance of the union in distributing campaign material to the members, at the candidate's expense. The investigation established that the complainant never made any such request, so the local did not violate the Act.

The investigation established that the local's nominations/election notice incorrectly stated that the meeting attendance rule applied to candidates for Delegate to the International Convention as well as to candidates for officer positions. In fact, the rule only applies to candidates for officer positions.

The complainant did not include this allegation in his protest to the union, although he was certainly aware of the facts underlying this apparent violation. For that reason, the Secretary is precluded from suing on the basis of the incorrect notice.

The investigation also established that the incorrect notice could not have affected the outcome of the election for any office. The complainant and other candidates who did not qualify to run for officer positions were in fact permitted to run for Delegate. The investigation did not establish evidence that any member was misled by the incorrect notice.

The investigation did not disclose any violation of the Act which may have affected the outcome of the election. Therefore, the file has been closed.

## EXHIBIT B

Feb 15 1985

Paul Alan Levy, Esq.

Public Citizen Litigation Group

Suite 700

2000 "P" Street, N.W.

Washington, D.C. 20036

Re: Local 6, International Brotherhood of Electrical Workers

SOL: 84-(LM)-187

Dear Mr. Levy:

This writing will respond to your letter dated February 1, 1985, regarding our decision not to file suit on behalf of complainant, Thomas Doyle, in the above-referenced matter. We have carefully reconsidered our decision in light of the arguments set forth in your letter and have concluded that the Statement of Reasons is consistent with controlling precedent and provides both a sufficient and rational basis for our decision.

You first state that the Department of Labor has traditionally argued that a meeting attendance rule which works to disqualify the bulk of membership from office is *per se* unreasonable. The Department of Labor has never applied a *per se* test in this regard. Rather, the Department's traditional approach has been to review each meeting attendance rule on a case-by-case basis. As stated in 29 C.F.R. § 452.38, the reasonableness of a rule "must be gauged in light of *all* the circumstances, of a particular case". (Emphasis supplied). Furthermore, if the Department concludes that the rule is reasonable, it will not initiate litigation solely because the rule's effect is to disqualify a vast percentage of the membership from running for union office. In this regard, we refer you to several administrative cases which are summarized on pages 268 through 271 in the *Union Officer Elections and Trusteeships Case Digest, Supplement I*, which was prepared by the Labor-Management Services Administration in 1983 (copies attached). *See, e.g., Carpenters, Local 2378*, 78–(LM)–292 (rule reasonable even though it excludes 99% of local membership); *Government Employees (AFGE), Local 3369*, 78–(FL)–9 (no violation even though 98% of membership ineligible).

You also question why the Department has abandoned its "traditional objection" to "liberal excuse" rules, such as that employed by Local 6. Stated simply, this so-called "traditional objection" does not exist. To the contrary, the existence of a liberal excuse provision is often cited by the Department as a basis for concluding that a meeting attendance requirement is reasonable. Again, we refer you to pages 268–271 of the *Case Digest, Supplement I* wherein the following cases are summarized: *Rubber Workers, Local 134*, 81–(LM)–159; *Glass Bottle Blowers, Local 155*, 80–(LM)–78. Conversely, the *absence* of an excuse provision will almost always render a meeting attendance rule unreasonable. *See e.g., Postal Workers, Local 2251*, 80–(LM)–224.

Lastly, you challenge the Department's rejection of Mr. Doyle's contention that he attended the requisite number of meetings. As summarized in the Statement of Reasons, the Department's investigation produced conflicting and inconclusive evidence on the issue of Mr. Doyle's attendance. Consequently, the Department concluded that it could not meet its burden of proof, *i.e.*, it could not establish, by a preponderance of the evidence, that Mr. Doyle attended a sufficient number of meetings to be eligible to be a candidate under the union's constitution. *See*, 29 U.S.C. § 482(c). As such, this was a factual determination, which as you acknowledge, cannot be challenged in a *Bachowski*-type suit. You also assert that the sign-in rule was not "uniformly imposed" because incumbent officers were excused without any approval by the Executive Board, as provided by the local's by-laws. However, as you note on page 3 of your letter, "the investigation suggests that Local 6 has never refused to grant a request for an excuse". Thus, it is clear the rule has been uniformly imposed, as there is no evidence to suggest that non-incumbents have been denied excuses when requested.

I trust this letter resolves your concerns regarding this matter.

Sincerely,

/s/. Richard G. Hunsucker
Richard G. Hunsucker
Director, Office of Elections,
Trusteeships and International Union Audits